**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
ISLAND FILM, S.A.,            )
                              )
         Plaintiff,           )
                              )
         v.                   )      Civil Action No. 08-286 (RWR)
                              )
DEPARTMENT OF THE TREASURY,   )
                              )
         Defendant.           )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Island Film, S.A., brings this action against the Department of the Treasury, alleging a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of Island Film's request for records relating to the Office of Foreign Assets Control ("OFAC") blocking Island Film from receiving $30,000 in Cuba.  The parties have filed cross-motions for summary judgment.  Although the record shows that Treasury fulfilled its obligations with respect to many of the documents that it withheld or redacted, Treasury's Vaughn[1] index and supporting affidavit are not sufficient to justify withholding certain correspondence from a purported confidential source or screen printouts from various databases.  Nor are Treasury's

---

[1] In Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), the D.C. Circuit held that an agency must provide an "itemized explanation" for its withholding documents requested under the FOIA.  A chart setting forth such specific justifications is commonly termed a Vaughn index.

- 2 -

justifications for withholding case tracking numbers supported by current law.  Therefore, Island Film's motion for summary judgment will be denied in part, Treasury's motion for summary judgment will be granted in part and denied in part, and Treasury will be ordered to supplement its filings.

BACKGROUND

Island Film, S.A. is a company located in Havana, Cuba.  The company submitted a FOIA request to OFAC regarding a $30,000 wire transfer from Australia to Island Film that OFAC blocked while the transaction was being processed by a bank in New York.  OFAC began its search for records responsive to Island Film's FOIA request, but did not timely disclose any documents before Island Film filed this law suit.[2]

While processing Island Film's FOIA request, Treasury determined that several records responsive to Island Film's request were protected from disclosure under various FOIA exemptions.  After this suit was filed, Treasury produced two sets of responsive materials, parts of which were redacted. Treasury additionally provided Island Film with a Vaughn index purporting to identify each segment of information withheld and

---

[2] Because Island Film refused to pay the fees associated with its FOIA request, the parties' cross motions for summary judgment were denied without prejudice pending Island Film's payment or commitment to pay the assessed fees.  The motions were ultimately reinstated after Island Film agreed to pay the fees associated with its FOIA request.

- 3 -

also to justify its non-disclosure, as well as an affidavit
supporting the index's justifications.

Having concluded that it had produced all information to
which Island Film was entitled, Treasury filed a motion for
summary judgment arguing that it had fulfilled its obligations
under FOIA, and that it properly withheld certain information and
records responsive to Island Film's FOIA request under FOIA
exemptions 2, 4, 5, 6, 7(C), 7(D), and 7(E).  Treasury argued
that the records sought by Island Film were exempt from
disclosure because they were used solely for internal purposes,
contained confidential commercial information, would not be
subject to disclosure in a civil discovery context, contained
personal identifying information about low-level government
employees and third parties, were communications with a
confidential source, and related to the sources of law
enforcement investigations.  In particular, the records that
Treasury asserted were exempt for disclosure under FOIA
exemptions 7(D) and 7(E) consisted of financial transactional
details submitted to OFAC by a purported confidential source and
screen printouts of various databases used by Treasury during its
investigations, respectively.

Island Film in turn cross-moved for summary judgment,
arguing that Treasury's Vaughn declaration was inadequate and
required more specificity, particularly to allow Island Film to

- 4 -

determine whether any portions of Treasury's claimed exempt
records were segregable.

## DISCUSSION

Summary judgment is appropriate when there exists no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law. Fed. R. Civ. P. 56(a); see also
Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). The burden
falls on the moving party to provide a sufficient factual record
that demonstrates the absence of a genuine issue of material
fact. See Beard v. Banks, 548 U.S. 521, 529 (2006). A court
must draw all reasonable inferences from the evidentiary record
in favor of the non-moving party. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 255 (1986). In a FOIA suit, an agency is
entitled to summary judgment if it demonstrates that no material
facts are in dispute and that all information that falls within
the class requested either has been produced, is unidentifiable,
or is exempt from disclosure. Students Against Genocide v. Dep't
of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S.
Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). A district
court must conduct a de novo review of the record in a FOIA case,
and the agency resisting disclosure bears the burden of
persuasion in defending its action. 5 U.S.C. § 552(a)(4)(B); see
also Long v. U.S. Dep't of Justice, 450 F. Supp. 2d 42, 53
(D.D.C. 2006).

- 5 -

I.   ADEQUACY OF SEARCH

     FOIA requires that government agencies make good faith
efforts to conduct reasonable searches for all records that are
responsive to FOIA requests.  Baker & Hostetler LLP v. U.S. Dep't
of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006).  What
constitutes a reasonable search will vary from case to case,
Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990), but
an agency must construe the scope of a request liberally.  Nation
Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890
(D.C. Cir. 1995).  An agency must demonstrate that its good faith
search effort used "'methods which can be reasonably expected to
produce the information requested.'"  Baker & Hostetler LLP, 473
F.3d at 318 (quoting Nation Magazine, 71 F.3d at 890).  A
search's adequacy is not determined by its results, but by the
reasonableness of the method, Casillas v. U.S. Dep't of Justice,
672 F. Supp. 2d 45, 48 (D.D.C. 2009), since "particular documents
may have been accidentally lost or destroyed, or a reasonable and
thorough search may have missed them."  Iturralde v. Comptroller
of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  An agency is
entitled to use detailed non-conclusory affidavits or
declarations that are submitted in good faith to show that the
search it conducted in response to a FOIA request is adequate.
Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551-52 (D.C.
Cir. 1994) (stating that the affidavits or declarations must

- 6 -

describe "what records were searched, by whom, and through what process").  Agency affidavits cannot be rebutted with mere speculation about the existence of additional responsive documents.  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Treasury has provided evidence that it conducted an adequate search.  The declaration of Virginia Canter, who has supervisory responsibility for processing OFAC's FOIA requests, identifies the six agency divisions to which search requests were sent, a description of what responsibilities each of the divisions had that made a search of its files reasonably likely to produce results responsive to Island Film's request, and search terms used.  (Def.'s Mem., Second Decl. of Virginia R. Canter ("Canter Decl.") ¶¶ 1, 7, 27-31.)  Island Film has not rebutted Canter's declaration on this issue, nor has it otherwise challenged the search's adequacy.  Thus, Treasury's search was adequate.

II.  WITHHOLDINGS

The FOIA requires agencies to comply with requests to make their records available to the public, unless information is exempted by clear statutory language.  5 U.S.C. §§ 552(a), (b); Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).  Although there is a "strong presumption in favor of disclosure," U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991), there are nine exemptions to disclosure set forth in 5

- 7 -

U.S.C. § 552(b).  These exemptions are to be construed as narrowly as possible to maximize access to agency information, which is one of the overall purposes of the FOIA.  Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).

Because the party requesting disclosure cannot know the precise contents of the documents withheld, it is at a disadvantage to claim misapplication of an exemption, and a factual dispute may arise regarding whether the documents actually fit within the cited exemptions.  Id. at 823-24.  To provide an effective opportunity for the requesting party to challenge the applicability of an exemption and for the court to assess the exemption's validity, the agency must explain the specific reason for nondisclosure.  Id. at 826; see also Oglesby, 79 F.3d at 1176 ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection.").  Conclusory statements and generalized claims of exemption are insufficient to justify withholding. Vaughn, 484 F.2d at 826; see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977) (noting that "the burden which the FOIA specifically places on the Government to show that the information withheld is exempt from disclosure cannot be satisfied by the sweeping and conclusory citation of an exemption") (footnote omitted).

- 8 -

However, the "materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  If the agency affidavits and Vaughn index "'contain reasonable specificity of detail rather than mere conclusory statements,'" then a plaintiff must point either to contradictory evidence in the record or provide independent evidence of agency bad faith to demonstrate that the agency improperly invoked an exemption. Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting Gallant v. NLRB, 26 F.3d 168, 171 (D.C. Cir. 1994)).[3]

A.   Exemption 2

Treasury redacted internal administrative case tracking numbers from documents that it disclosed.  (Def.'s Mem. at 14.) An agency is not required to disclose records "related solely to the internal personnel rules and practices of an agency[.]"  5

---

[3] Island Film argues that Treasury produced certain documents to which the government should not have had access, giving the "appearance that the government 'hacked'" the files. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J. at 4.)  However, Treasury has provided evidence that Island Film's counsel faxed some of these documents to OFAC and that an informant sent the remainder of the documents to OFAC. (See Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J., Decl. of John Battle ¶¶ 7, 9.)  Thus, Island Film's mere allegation of agency wrongdoing is not sufficient to demonstrate agency bad faith. See Hoch v. CIA, 593 F. Supp. 675, 680 (D.D.C. 1984) (noting that the sufficiency of the agency's affidavits is not undermined by a mere allegation of agency wrongdoing).

- 9 -

U.S.C. § 552(b)(2).  Justifying the redactions, Treasury relied

on Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992), in

which the D.C. Circuit distinguished between two categories of

information subject to Exemption 2: "Low 2" information

consisting of human resources and employee relations records and

"High 2" information consisting of material the disclosure of

which would risk circumvention of the law.  Treasury argued that

because an unauthorized entrant into an OFAC file room or an

unauthorized user of an OFAC database could use the tracking

numbers to gain access to information relating to law enforcement

or commercial records, it properly withheld the case tracking

numbers as "high 2."  (Canter Decl. ¶ 44.)  After the parties

briefed the instant motions, the Supreme Court held that

Exemption 2 shields only those records relating to employee

relations and human resources issues, rejecting entirely the

"high 2" category applied by the D.C. Circuit and other circuits.

Milner v. Dep't of the Navy, 131 S. Ct. 1259, 1265 (2011) ("Our

construction of the statutory language simply makes clear that

Low 2 is all of 2 (and that High 2 is not 2 at all . . .).")  To

afford Treasury the opportunity to disclose the case tracking

numbers, or to justify withholding them under a different

exemption, the parties' cross-motions for summary judgment will

be denied without prejudice with respect to Exemption 2.

- 10 -

B.   <u>Exemption 4</u>

Treasury seeks to withhold materials related to applications

for licenses to authorize activity otherwise prohibited by the

sanctions regulations OFAC administers, responses to

administrative subpoenas, and data related to blocked assets,

property subject to sanctions prohibitions.[4]  (Def.'s Mem. at 15-

22.)  An agency is not required to disclose "commercial or

financial information obtained from a person and privileged or

confidential[.]"  5 U.S.C. § 552(b)(4).  Commercial information

is not confined merely "to records that actually reveal basic

commercial operations, such as sales statistics, profits and

losses, and inventories, or relate to the income-producing

aspects of a business."  <u>Public Citizen Health Research Group v.</u>

<u>FDA</u>, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Rather, courts accord

the terms "commercial" and "financial" their "ordinary meanings,"

which include not only economic data relating to business

entities but also personal financial information.  <u>Id.</u>; <u>see also</u>

<u>Washington Post Co. v. U.S. Dep't of Health and Human Servs.</u>, 690

F.2d 252, 266 (D.C. Cir. 1982).  Information is confidential if

"its disclosure is likely either '(1) to impair the Government's

--------

[4] Treasury is no longer seeking to withhold under Exemption
4 printouts from a commercial database, since it invited
objections to the release of those documents but received no
response from the operator of the database.  (Def.'s Reply to
Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Def.'s Opp'n to Pl.'s
Cross-Mot. for Summ. J. at 5 n.2.)

- 11 -

ability to obtain necessary information in the future; or (2) to
cause substantial harm to the competitive position of the person
from whom the information was obtained.'"  Public Citizen Health
Research Group v. FDA, 185 F.3d 898, 903 (D.C. Cir. 1999)
(quoting Nat'l Parks and Conservation Ass'n v. Morton, 498 F.2d
765, 770 (D.C. Cir. 1974)).

OFAC issues licenses that authorize either a particular
transaction or a category of activity that would otherwise be
prohibited by sanctions regulations. (Canter Decl. ¶ 47.)  Here,
several bank applications to release blocked funds were
responsive to Island Film's request. (Id. ¶ 51.)  These
applications contain detailed transactional information about the
blocked financial transactions (id. ¶ 52), such as the names of
involved business entities, the dollar amounts and details of
intended commercial activity, contractual terms, banking
information such as account or routing numbers, and other
details. (Def.'s Mem., Vaughn Index ("Vaughn Index") ¶¶ 4, 6,
10-11, 13-15, 17-19, 22, 25-26, 35-43, 47, 49-55, 60, 62, 64-65,
68-69, 71-72, 76-88.)  This kind of information is readily
characterized as commercial or financial within the meaning of
the exemption.  Treasury maintains that public disclosure of
documents submitted by license applicants would impair OFAC's
ability to obtain sensitive information in the future.
Applicants who believed that information in their applications

- 12 -

might become public, the argument goes, would have incentives either to provide as little information as possible or to not apply at all, thus depriving OFAC of important information about commercial activity of a sanction subject.  (Canter Decl. ¶ 50.) Island Film does not dispute Treasury's position that disclosure would impair the agency's collection of information.  Nor does Island Film dispute Treasury's representation (id. ¶ 49) that public disclosure of these documents could also cause the applicants competitive harm by allowing competitors to gain access to information regarding business operations, confidential contacts, and financial and expense data.  Treasury's representation is reasonable.  Release of the specified categories of information, particularly sensitive information such as contractual terms and banking information, could cause the applicants competitive harm by revealing customer identities and transaction details, and cause the customers to seek the services of competitors who may seem better able to protect their financial privacy.  (Id.)  Thus, Treasury properly withheld these applications under Exemption 4.[5]

_____

[5] Responses to administrative subpoenas and OFAC reports on blocked assets contain similar business expense details and amounts.  (Canter Decl. ¶¶ 53-54, 58-60; Vaughn Index ¶¶ 35-37; 65.)  This information is both commercial and confidential, and Treasury therefore properly withheld these documents under Exemption 4 as well.

- 13 -

C.   Exemption 5

Treasury seeks to withhold certain information under the deliberative process privilege.  An agency is not required to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  This exemption has been construed to protect from disclosure documents that would not be subject to disclosure in the civil discovery context.  Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 601 (D.C. Cir. 2001).  Documents are protected from disclosure in such a context if they are created in the course of "the deliberative process that precedes most decisions of government agencies."  Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047 (D.C. Cir. 1982).  The D.C. Circuit has reasoned that the exemption is justified on the grounds that it protects debate and candid consideration of alternatives within an agency, protects the public from "'the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon[,]'" and protects the integrity of the decision-making process.  Id. at 1048 (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc)).  This executive deliberative process privilege applies only if the document is "predecisional" -- prepared to aid a decision-maker in arriving

- 14 -

at his decision, not to support a past decision -- and

"deliberative" -- concerning legal or policy, not factual

matters.  Citizens for Responsibility & Ethics in Wash. v. Nat'l

Archives and Records Admin., 715 F. Supp. 2d 134, 139-40 (D.D.C.

2010).  The crux of the inquiry is whether disclosure of the

information would discourage candid discussion within the agency,

Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C.

Cir. 1991), and a court must show particular deference to the

agency's assessment on this matter, since the agency possesses

unique knowledge of its decision-making process.  Pfeiffer v.

CIA, 721 F. Supp. 337, 340 (D.D.C. 1989).

     Here, Treasury has indicated with reasonable specificity

that it has redacted employees' internal discussions regarding a

pending licensing matter, internal administrative markings on

documents, internal notes, and draft correspondence and documents

that it claims are part of OFAC's deliberative process.  (Vaughn

Index ¶¶ 11, 14, 23, 27-28, 37, 44-46, 63-64.)  The agency's

assessment is that release of such notes, drafts, and internal

memoranda would chill future predecisional discussion and debate.

(Canter Decl. ¶ 63.)  The description of the withheld records

provided by the Vaughn index and agency affidavit sufficiently

support the conclusion that the records were made to facilitate

the agency's policy determination about how to respond to license

applications.  The plaintiff has cited no contradictory evidence

- 15 -

in the record, or provided any evidence bad faith, to undermine
the agency's assessment that disclosure of the withheld records
would inhibit candor in future agency deliberations.  Because
this assessment therefore is entitled to deference, Treasury
properly redacted these portions of documents under Exemption 5.

D.   Exemptions 6 and 7(C)

Treasury seeks to withhold the names and addresses of low-
level government employees and third parties that appear in
responsive records.  An agency is not required to disclose
"personnel . . . and similar files the disclosure of which would
constitute a clearly unwarranted invasion of personal privacy[,]"
5 U.S.C. § 552(b)(6), or "records or information compiled for law
enforcement purposes . . . that . . . could reasonably be
expected to constitute an unwarranted invasion of personal
privacy[.]"  5 U.S.C. § 552(b)(7)(C).  The government's burden to
justify withholding personal identifying information is reduced
as compared to other types of information.  Citizens for
Responsibility and Ethics in Wash. v. U.S. Dep't of Justice, 658
F. Supp. 2d 217, 239 (D.D.C. 2009).  "Both Exemptions 6 and 7(C)
require the Court to balance privacy interests against the
public's interest in release of the requested information,
keeping in mind that disclosure of personal information does not
necessarily contribute to FOIA's central purpose of fostering an
understanding of the government's activities and conduct."  Id.

at 238-39 (considering Exemptions 6 and 7(C) concurrently).
While all individuals have a privacy interest under Exemption
7(C) of personal information contained in law enforcement
records, see Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1115
(D.C. Cir. 2007), whether individuals have a privacy interest in
their names and addresses under Exemption 6 depends on the
context and anticipated consequences of disclosure.  Morley v.
CIA, 508 F.3d 1108, 1128 (D.C. Cir. 2007).  Once the agency
identifies a privacy interest, the plaintiff must identify a
countervailing public interest that disclosure is likely to
advance.  Am. Civil Liberties Union v. Dep't of Justice, 698 F.
Supp. 2d 163, 165 (D.D.C. 2010).

Here, Treasury has redacted some personal information,
including the names, of low-level agency personnel and third
parties under Exemption 6 alone, some under Exemption 7(C) alone,
and some under both exemptions.  (Def.'s Mem. at 25, 28; Vaughn
Index ¶¶ 1-9, 11-24, 26-30, 32-35, 37-38, 40-42, 44-45, 47-50.)
For personal information about third parties contained in OFAC's
investigative files, which it compiles to determine whether
certain individuals or business entities should be subjected to
enforcement actions or civil penalties for failure to comply with
sanction regulations, Treasury invokes Exemption 7(C).  (Canter
Decl. ¶ 72.)  Because the purpose of these investigatory files is
to identify violations of law, and these investigations are

related to OFAC's duty to enforce sanctions regulations, the third parties to which the files refer have a privacy interest in the personal information the files contain.  See Jefferson v. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 177 (D.C. Cir. 2002).  For personal information about agency personnel and third parties not contained in investigative files, Treasury invokes Exemption 6.  (Canter Decl. ¶ 66.)  OFAC evaluated the consequences of disclosure and concluded that public association with a sanctions investigation or sanctions administration function could be stigmatizing or pose a threat to the safety of the individuals to which the records refer.  (Id. (noting that the individuals could face unwarranted public scrutiny or harassing phone calls to elicit sensitive information).)  These individuals have a privacy interest in avoiding the harassment that could ensue following the disclosure of their personal information.  See Judicial Watch, Inc. v. FDA, 449 F.3d 141, 153 (D.C. Cir. 2006).  Because Island Film has not asserted a countervailing public interest in the disclosure of these names and addresses, and no public interest is readily apparent, see id., Treasury properly redacted this information under Exemptions 6 and 7(C).

E.   Exemption 7(D)

Treasury seeks to withhold financial transactions details submitted to OFAC under an express grant of confidentiality and

- 18 -

correspondence from a confidential source.  (Def.'s Mem. at 30;

Vaughn Index ¶¶ 25, 65, 73-75.)  An agency is not required to

disclose "the identity of a confidential source . . . and, in the

case of a record or information compiled by criminal law

enforcement authority in the course of a criminal investigation

or by an agency conducting a lawful national security

intelligence investigation, information furnished by a

confidential source."  5 U.S.C. § 552(b)(7)(D).  "Under Exemption

7(D), the question is not whether the requested *document* is of

the type that the agency usually treats as confidential, but

whether the particular *source* spoke with an understanding that

the communication would remain confidential."  U.S. Dep't of

Justice v. Landano, 508 U.S. 165, 172 (1993) (emphasis in

original).  An assurance of confidentiality can be express or

implied.  Mays v. Drug Enforcement Admin., 234 F.3d 1324, 1328

(D.C. Cir. 2000).  Express evidence of confidentiality can

include, among other things, "notations on the face of the

withheld document, the personal knowledge of an official familiar

with the source, a statement by the source, or contemporaneous

documents discussing practices or policies for dealing with the

source or similarly situated sources."  Id. at 1328-29.

Alternatively, the nature of the crime being investigated and the

informant's relation to it may support an inference of

confidentiality.  Landano, 508 U.S. at 181.  Crimes involving

- 19 -

violence and the risk of retaliation warrant an implied grant of confidentiality.  See, e.g., Williams v. FBI, 69 F.3d 1155, 1159-60 (D.C. Cir. 1995) (per curiam) (identifying "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government" by criminal organizations with histories of violence as warranting the inference); Mays, 234 F.3d at 1329-31 (identifying drug trafficking as warranting the inference); Owens v. U.S. Dep't of Justice, Civil Action No. 04-1701 (JDB), 2007 WL 778980, at *11 (D.D.C. Mar. 9, 2007) (identifying terrorist attacks as warranting the inference).  Cf. Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 906 (D.C. Cir. 1996) (refusing to identify computer crimes as warranting the inference).

Here, Treasury has withheld correspondence obtained under circumstances it claims warrant an inference of confidentiality and blocked asset reports filed under 31 C.F.R. § 501.603. (Canter Decl. ¶¶ 74-75.)  The blocked asset report regulation provides that the reports "are regarded as privileged and confidential." 31 C.F.R. § 501.603(a)(2).  This language is an express assurance of confidentiality, and Treasury properly withheld the reports under Exemption 7(D).  However, Treasury has not provided express evidence that its sources drafted the correspondence under a promise of confidentiality.  (See Canter Decl. ¶ 74 (stating that the OFAC obtained the information "in

circumstances under which there is at least an implied promise of confidentiality").)  Because the act is economic in nature and not inherently violent, providing information regarding sanctions violations is more closely analogous to providing information on computer crimes than to providing information about rebellion or insurrection, drug trafficking or terrorism.  Additionally, OFAC's assurance that it generally "treats such correspondence" (id.) as confidential is insufficient to warrant an inference that it provided such an assurance for the correspondence that is at issue here.  See Computer Prof'ls for Social Responsibility, 72 F.3d at 906 (noting that "the manner in which an agency 'routinely' handles information is not sufficient to establish an implied assurance of confidentiality as to any particular source").  Treasury therefore has not provided sufficient support for withholding the correspondence, and it will be ordered to supplement its affidavit and Vaughn index with respect to those documents.

    F.   Exemption 7(E)

    Treasury seeks to withhold screen printouts from various databases it used in its investigations.  (Def.'s Mem. at 33; Vaughn Index ¶¶ 89-118.)  An agency is not required to disclose information that would reveal "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

- 21 -

such disclosure could reasonably be expected to risk
circumvention of the law[.]"  5 U.S.C. § 552(b)(7)(E).  This
exemption includes materials related to the sources of law
enforcement investigations.  See Morley, 508 F.3d at 1129.

Here, Treasury asserts that the public is generally unaware
of which databases OFAC uses in its investigations, and that if
individuals under investigation knew "when, how, and to what
extent Treasury relies on certain databases as part of its
investigations, they could find this information valuable in
indirectly tracking, or even obstructing, an investigation[.]"
(Canter Decl. ¶ 77.)  However, the documents themselves do not
describe OFAC's procedure for accessing certain databases in the
course of its investigations.  Cf. Am. Civil Liberties Union v.
U.S. Dep't of Homeland Sec., Civil Action No. 08-1100 (RBW), 2010
WL 3718944, at *21 (D.D.C. Sep. 20, 2010) (finding withholding of
document proper where it contains the process and protocol for
accessing databases).  Neither the Vaughn index nor Treasury's
affidavit provides a sufficiently specific link between
disclosing the particular database printouts that Treasury seeks
to withhold and revealing when, how, and to what extent OFAC
relies on these databases in its investigations.  Rather, they
both merely recite the language of the exemption.  See Hussain v.
U.S. Dep't of Homeland Sec., 674 F. Supp. 2d 260, 271-72 (D.D.C.
2009) (rejecting withholding of documents under Exemption 7(D)

where the agency parroted the language of the statute and did not explain with any specificity why the release of the documents would reveal investigatory techniques).  In the absence of such an explanation linking disclosure to the risk of circumventing the law, Treasury has not provided a sufficient basis for withholding these documents under Exemption 7(D), and it will be ordered to supplement its affidavit and <u>Vaughn</u> index with respect to these documents.

III. SEGREGABILITY

An agency must disclose "[a]ny reasonably segregable portion" of an otherwise exempt record.  5 U.S.C. § 552(b); <u>see also</u> <u>Mead Data</u>, 566 F.2d at 260 (noting that because "[t]he focus of the FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains <u>some</u> exempt material") (emphasis added).  An agency cannot withhold non-exempt portions of a document unless they "are inextricably intertwined with exempt portions."  <u>Mead Data</u>, 566 F.2d at 260-61 (suggesting that an agency would not be required to disclose a document if, after removing all exempt portions, "an essentially meaningless set of words and phrases" remained).  While an agency is presumed to have complied with its obligation to disclose non-exempt portions of the record, <u>Sussman</u>, 494 F.3d at 1117, a "district court must make specific

findings of segregability regarding the documents to be withheld," id. at 1116.

To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" King v. U.S. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987) (quoting Mead Data, 566 F.2d at 251). Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002), determined that a "comprehensive Vaughn index, describing each document withheld, as well as the exemption under which it was withheld" supplemented by an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain segregable information was sufficient to fulfill the agency's obligation to establish a detailed justification for not disclosing the non-exempt portions of the documents. See also Juarez v. Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008) (noting that a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason"); Gutman v. U.S. Dep't of Justice, 238 F. Supp. 2d 284, 296 (D.D.C. 2003) (stating that the

- 24 -

segregability requirement was satisfied in part because the
<u>Vaughn</u> index detailed "each document's issue date, subject
matter, authorship, the intended recipient, the exemption under
which any pages are withheld, and an explanation as to why the
exemption applies to the document").

Treasury has withheld documents 73 through 75, the
correspondence from purported confidential sources, and 89
through 118, the screen printouts from various Treasury
databases, in full.  (<u>See</u> Vaughn Index ¶¶ 73-75, 89-118.)
Although Treasury has invoked multiple exemptions –– not merely
Exemptions 7(D) and 7(E), for which Treasury has not provided
adequate support –– to justify withholding these documents, the
remaining exemptions apply only to names and addresses,
information that is potentially segregable from the remainder of
the documents.  It therefore may be possible to redact this
information without withholding these documents in full.
Accordingly, Treasury also will be ordered to supplement its
<u>Vaughn</u> index and supporting affidavit to reflect whether Treasury
could disclose portions of these documents in the event that its
supplemental justifications for invoking Exemptions 7(D) and 7(E)
are found to be insufficient.

However, with respect to all other withheld documents, the
<u>Vaughn</u> index is sufficiently comprehensive, describing the
exemptions invoked and the parts of the document to which the

- 25 -

exemptions apply.  Moreover, Canter's declaration states that "Treasury conducted a page-by-page review of the material responsive to plaintiff's FOIA request to determine what material . . . could be disclosed and what material was exempt from disclosure[,]" and "all reasonably segregable information has been released wherever possible unless the information is inextricably intertwined with information properly withheld[.]" (Canter Decl. ¶ 78.)  As in <u>Johnson</u>, Treasury has adequately demonstrated through the combination of the <u>Vaughn</u> index description and the Canter declaration that these remaining documents contain no reasonably segregable, non-exempt information.

<u>CONCLUSION AND ORDER</u>

Although Treasury properly invoked Exemptions 4, 5, 6, and 7(C), its justification for invoking Exemption 2 is precluded by <u>Milner</u> and it has not provided sufficient evidence to support its invocation of Exemptions 7(D) and 7(E).  Accordingly, it is hereby

ORDERED that the defendant's motion [11] for summary judgment be, and hereby is, GRANTED in part and DENIED without prejudice in part.  Judgment is entered for the defendant with respect to Exemptions 4, 5, 6, and 7(C).  The plaintiff's cross-motion [12] is DENIED as to material withheld under those exemptions.  It is further

- 26 -

ORDERED that the defendant by July 17, 2012 supplement its briefing regarding the redacted case tracking numbers and supplement its <u>Vaughn</u> index and supporting affidavit both to properly justify the withholding of documents under FOIA Exemptions 7(D) and 7(E), and to reflect whether it could disclose portions of these documents in the event that its supplemental justifications for invoking Exemptions 7(D) and 7(E) are found to be insufficient.

SIGNED this 26th day of June, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge